IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| NAYELY REYES, ERNESTO ESPENOSA, LOFTON KING, DARRELL PHILLIP, and JALISA PHILLIP, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs<br><br><br>BIO-LAB, INC. and KIK CONSUMER PRODUCTS, INC.,<br><br>Defendants | Case No. _____<br><br><br>**Class Action Complaint**<br><br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiffs, by and through counsel, on behalf of themselves and all others similarly situated, allege as follows against Defendants:

### NATURE OF THE ACTION

1.    This is a class action seeking compensatory and punitive damages for each Plaintiff individually, and as representatives of the subclasses described herein.  This action is limited to evacuation and shelter-in-place related damages for residents and businesses as more fully described below.

2.    Plaintiffs generally allege that Defendants were willful, wanton and/or negligent in causing a chemical reaction and/or fire which occurred at Defendants' facility located at or near 1700 Old Covington Highway in Conyers, Rockdale County, Georgia (hereinafter the "Facility") beginning on or about the morning of Sunday, September 29, 2024 (hereinafter "the Incident").

## PARTIES

3.     Named as Plaintiffs, and as class representatives, herein are persons of full legal capacity and domiciled in Rockdale County, Georgia.

4.     Plaintiffs appear in their individual capacity and as representatives of subclasses as more fully set forth herein.

5.     In addition to the above-named Plaintiffs, it is further alleged that thousands of residents, and hundreds of businesses, of Rockdale County, Georgia, most of whom at this time are unknown and therefore unnamed, were damaged in one or more ways as herein alleged, who as this class action progresses will be identified, and are in fact contemplated members of the subclasses of persons and businesses for whom this action seeks to protect.

6.     Upon information and belief, Defendant Bio-Lab, Inc. (BioLab") is a Delaware corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5, and a registered service agent of CT Corporation System, 289 S. Culver St., Lawrenceville, GA, 30046-4805. Upon information and belief, Bio-Labs, Inc. is a wholly-owned subsidiary of Defendant KIK Consumer Products, Inc.

7.     Upon information and belief, Defendants KIK Consumer Products, Inc. ("Kik") is a Canadian corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5.  On its website, Defendant Kik indicates that it owns and/or operates the Facility.  On its website, Defendant Kik indicates that it maintains a "Center of Excellence – Atlanta" at 1725 North Brown Road, Lawrenceville, Georgia.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this class action pursuant to 28 U.S.C. 1332(d)(2), as amended by the Class Action Fairness Act ("CAFA").  In the aggregate, the claims of Plaintiffs and the other members of the Subclasses exceed the jurisdictional minimum

amount in controversy of $5,000,000 exclusive of costs and interest. The Plaintiffs and more than two-thirds of the members of the class and/or subclasses they seek to represent are residents of Georgia, the primary defendant is a citizen of a state other than Georgia and there is no defendant from whom significant relief is sought by members of the subclasses who is a citizen of Georgia. 28 U.S.C. 1332 (d)(2)(A) and 1332 (d)(4)(A).

9.     Venue is proper in this District because Plaintiffs and other putative class members reside here and suffered damages from the Incident, which occurred in this District.

## **GENERAL FACTUAL ALLEGATIONS**

10.    Defendants own and operate the Facility at which Defendants manufacture and/or produce chemicals for various end-uses including chemicals used in pools and spas.

11.    The chemicals manufactured, produced, and/or stored at the Facility include chemicals that are extremely dangerous and highly reactive when exposed to various conditions including, but not limited to water.

12.    The chemicals manufactured, produced, and/or stored at the Facility include chlorine-based compounds and other dangerous and hazardous chemicals that cause respiratory problems, inhalation issues, ear, nose and throat issues, and other significant adverse health effects.

13.    Upon information and belief, at approximately 5:00 a.m. on Sunday, September 29, 2024, a chemical fire broke out at the Facility.

14.    Upon information and belief, at approximately 5:30 a.m., a fire suppression system activated at the Facility resulting in a widespread release of water in the Facility.

15.    The water released from the fire suppression system came into contact with water-reactive chemicals at the Facility.

3

16.     Upon information and belief, the water-reactive chemicals at the Facility had been recklessly and negligently stored at the Facility.

17.     Upon information and belief, Defendants knew or should have known that dangerous and serious consequences would result due to the reckless and negligent storage of water-reactive chemicals at the Facility.

18.     Upon information and belief, on at least one prior occasion, if not more, the reckless and negligent storage of chemicals at the Facility had resulted in fires and/or chemical leaks with subsequent injuries and evacuations of the neighboring community.

19.     Despite the significant history of fire and/or chemical incidents at the Facility, Defendants failed to maintain the Facility in a safe and proper manner and recklessly and negligently stored materials including water-reactive chemicals at the Facility.

20.     Despite the significant history of fire and/or chemical incidents at the Facility, Defendants failed to maintain the Facility in a safe and proper manner and recklessly and negligently allowed a fire to start at the Facility.

21.     Despite the significant history of fire and/or chemical incidents at the Facility, Defendants failed to maintain the Facility in a safe and proper manner and recklessly and negligently allowed water to contact water-reactive chemicals at the Facility.

22.     As a result of the fire and addition of water to the water-reactive chemicals, a massive cloud of smoke and chemical fumes started emanating from the Facility into the air and the surrounding community.

23.     According to available reports, testing by the United States Environmental Protection Agency and/or other agencies and/or scientists has revealed measurable and potentially dangerous levels of chemicals including, but not limited to, of chlorine and bromine in the air emitting from the Facility.

4

24.    The unsafe and dangerous plume of air emanating from the Facility has spread to areas of Rockdale County resulting in exposures to dangerous and toxic chemicals for the residents including Plaintiffs.

25.    In an attempt to protect residents from the Incident, Rockdale County issued an evacuation order covering eight square miles.  Upon information and belief, this evacuation order has affected approximately 17,000 residents including Plaintiffs Reyes and Espenosa.

26.    In a further attempt to protect residents from the Incident, Rockdale County issued a series of "shelter-in-place" order for Rockdale County.  Upon information and belief, this evacuation order has affected approximately 90,000 residents including Plaintiff King.

27.     As a result of the Incident and/or the subsequent evacuation order, residents were deprived of the use, comfort, quiet enjoyment, and safety of their homes.

28.    As a result of the Incident and/or the subsequent shelter-in-place orders, residents were deprived of the liberty to safely and securely come and go from their homes.

29.    As a result of the Incident and in the exercise of caution and for their own safety, thousands of other people that were not subject to the evacuation order of shelter-in-place orders evacuated their homes or shelter-in-place at their homes.

30.    As a result of the Incident and subsequent orders, residents incurred expenses in the form of the cost to shelter, inability to transit to and from work, additional food expenses, and the emotional distress and inconvenience of having restrictions placed upon their access to their homes.

31.    As a result of the Incident and subsequent orders, businesses were forced to close and, consequently, experienced losses of revenue.  Upon information and belief, hundreds of businesses were affected.

32.     The evacuation order and shelter-in-place orders were a foreseeable consequence of the Defendants' acts and/or omissions and of the Incident as alleged herein.

33.     The damages experienced and suffered by the residents and businesses were a foreseeable consequence of the Defendants' acts and/or omissions and of the Incident as alleged herein.

34.     The damages experienced and suffered by the residents and businesses were preventable and avoidable had the Defendants exercised reasonable care in the operation of the Facility but Defendants failed to do so.

## CLASS ACTION ALLEGATIONS

35.     This action is brought by Plaintiffs as representatives of all others similarly situated under the provisions of Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), 23(b)(3) and 23(c)(4), for compensatory and punitive damages, court costs and attorneys' fees as set forth in more detail below.  Each Plaintiff, as a representative of the Class and/or Subclass, has suffered one or more of the elements of damages as alleged herein and is a member of the Class and /or Subclass as set forth below.

36.     The geographic boundaries of the Subclasses defined below includes Rockdale County, Georgia, the areas covered by an evacuation order or shelter-in-place orders issued by local officials in response to the Incident, and the area proximate to the Facility where people voluntarily evacuated or voluntarily sheltered-in-place. This geographic area as described is also referred to as the "Affected Area."

37.     The classes or subclasses so represented by Plaintiffs in this action, and of which Plaintiffs are themselves members, are defined as follows:

> Subclass I:
> All natural persons, whether minor or adult, including any person claiming by, through or under a Subclass Member, who were physically present in the Affected Area on or after 5:30 a.m., September 29, 2024 and who

6

evacuated; and all natural persons, including minors and adults, who resided in the Affected Area or who had a possessory interest in any property in the Affected Area, but who were outside of the Affected Area on or after 5:30 a.m., September 29, 2024 and who were prevented from returning to their residences or accessing or using their property due to an evacuation order.

Sub-Class II:
All natural persons, whether minor or adult, including any person claiming by, through or under a Subclass Member, who were physically present in the Affected Area on or after 5:30 a.m., September 29, 2024 and who was forced to shelter-in-place due to a shelter-in-place order.

Sub-Class III:
All businesses located in the Affected Area that were forced to close or could not open on or after September 29, 2024 due to an evacuation order or shelter-in-place order.

Sub-Class IV:
All natural persons, whether minor or adult, including any person claiming by, through or under a Subclass Member, who were physically present in the Affected Area on or after 5:30 a.m., September 29, 2024 and who was voluntarily evacuated or voluntarily sheltered-in-place.

38.     Excluded from the Subclasses are those persons who would otherwise be class members, but who or which are: (i) Defendants, or any of its employees, agents, insurers, contractors, and subcontractors, including employees of Defendants' agents, contractors or subcontractors, (ii) the Court, court personnel and their immediate families, (iii) the attorneys for any of the Parties and members of their law firms; (iv) making a claim for personal injury; and (v) Opt Outs.

39.     This action does not seek recovery for personal injury damages allegedly incurred by any Subclass members.

40.     Plaintiff Nayely Reyes, her two children, and Plaintiff Ernesto Espenosa reside at 106 Frontier Drive, Conyers, Georgia, 30012. During Sunday, September 29, 2024, they were alerted of the necessity to evacuate their home which is within the Affected Area and

subject to the mandatory evacuation order. They did evacuate pursuant to the evacuation order and as a result, incurred (and continue to incur) evacuation expenses and suffered damages, including but not limited to, financial losses, loss of use and enjoyment of their home and inconvenience. Plaintiffs Nayely Reyes and Ernesto Espenosa are representatives of Subclass I.

41.    Plaintiff Lofton King resides at 1318 Jimi Lane, Conyers, Georgia 30012.  During Sunday, September 29, 2024, he was alerted of the necessity to shelter-in-place at his residence which is within the Affected Area and subject to the shelter-in-place order. He complied with the order and as a result, incurred suffered damages, including but not limited to, loss of liberty, impact to the use and enjoyment of his home, and inconvenience. Mr. King operates a moving company business and, as a result, lost revenue due to his inability to operate the moving company. Plaintiff Lofton King is a representative of Subclass II and Subclass III.

42.    Plaintiffs Darrell Phillip and Jalisa Phillip reside at 50 Grassy Springs Court, Oxford, Georgia 30054.  During Sunday, September 29, 2024, they were alerted of the Incident.  In order to protect themselves, they did evacuate their home as a result, incurred evacuation expenses and suffered damages, including but not limited to, financial losses, loss of use and enjoyment of their home and inconvenience. Plaintiffs Darrell Phillip and Jalisa Phillip are representatives of Subclass IV.

43.    Upon information and belief, a significant number of other residents of Conyers and Rockdale County, Georgia and the surrounding area evacuated their homes, or were prevented from entering their homes, or sheltered-in-place in response to the evacuation order in a similar fashion as the individual Plaintiffs.  The exact number of members of the Subclasses identified above is not precisely known, but it is estimated that the total number

of all Subclass members exceeds ninety thousand (90,000). The Subclasses are so numerous that joinder of individual members is impractical.

44.     Common issues of law and fact predominate with respect to the issues raised herein. The only individual questions affecting individual members of the Subclasses are the precise amount and measure of damages to which each Subclass member is entitled.  There are numerous questions of law or fact common to the Subclasses, including, but not limited to:

  i.     Whether and to what extent the Defendants knew or should have known of the potential for a fire at the Facility;

  ii.    Whether Defendants' acts were reckless and/or negligent;

  iii.   Whether and to what extent the Defendants' conduct constitutes a private nuisance;

  iv.    Whether and to what extent the Defendants' conduct constitutes a trespass;

  v.     Whether and to what extent Defendants' activities cause them to be strictly liable to Plaintiffs;

  vi.    Whether and to what extent Defendants' actions and omissions have caused loss of use and enjoyment of property; and

  vii.   Whether the Plaintiffs and the Subclasses are entitled to compensatory and/or punitive damages.

45.     As residents or businesses in the Affected Area, Plaintiffs are situated similarly to all members of the Subclasses with respect to the issues presented in this case.  If Defendants' actions have harmed Plaintiffs, they have harmed the Subclass members in a common fashion.

46.     The claims of the representative Plaintiffs are typical of the claims of the Subclass

members.  The claims of all members of the Subclasses, including the Plaintiffs, depend on the showing that the acts and omissions of the Defendants that gave rise to the rights of the Plaintiffs to the relief sought herein and in showing that the damages were caused by said acts and omissions of the Defendants.

47.     It is believed that there are hundreds, and likely thousands, of members of each Subclass.  A class action is the superior method for the fair and efficient adjudication of this controversy, because joinder of all Subclass members is impracticable.  Whereas here, the size and nature of individual Subclass members' claims would allow few Subclass members to seek legal redress against Defendants for the wrongs complained of herein, a representative class action is both the appropriate vehicle by which to adjudicate these claims and is essential to the interests of justice.  Furthermore, a class action regarding the issues in this case creates no significant problems of manageability.  To the extent manageability problems do arise, the Court can use management tools such as certification of particular issues for class-wide treatment. Questions of law or fact common to the classes predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendants and depend on the same determinations of law and fact.

48.     Plaintiffs can and will adequately represent and protect the interests of the Subclasses and lack interests that conflict with or are antagonistic to the interests of other Subclass members.

49.     Plaintiffs have retained attorneys competent and experienced in class actions, including class actions involving environmental issues, nuisance, and evacuation damages. Plaintiffs and their attorneys have adequate resources, experience and commitment to litigate this matter.

10

## COUNT I (Negligence)

50.     Plaintiffs re-allege herein all of the above allegations as if set forth in full herein.

51.     At all relevant times, Defendants had a duty to comply with federal and state regulatory standards, as well as industry standards, governing the storage and handling of hazardous substances and to prevent the ignition and/or adverse chemical reaction of such substances within the Facility and/or the release of hazardous substances from the Facility.

52.     At all relevant times, Defendants had a duty to comply with federal and state regulatory standards, as well as industry standards, governing the conduct of process hazardous analyses (PHA's) and safety audits at the Facility and to identify, evaluate and control the hazards involved in handling and storage of hazardous substances.

53.     At all relevant times, Defendants had a duty to establish procedures and processes to ensure that the Facility is operated in a safe and reasonable manner and in such a way as to prevent ignition of hazardous substances at the Facility and/or the release of hazardous substances from the Facility.

54.     At all relevant times, Defendants had a duty to refrain from operating the Facility in a manner that would foreseeably cause harm or damage to Plaintiffs and the other members of the Subclasses.

55.     Defendants knew, or in the exercise of reasonable care, should have known, of the serious consequences that a fire and/or chemical release at the Facility could have on people in the surrounding community including Plaintiffs and the Sublasses including the potential that a mandatory evacuation could occur and the potential that a sheltering-in-place order could occur.

56.     Defendants knew, or in the exercise of reasonable care, should have known, of the dangers associated with the storage and handling of hazardous substances and the possible

adverse consequences of failing to properly store and handle hazardous substances in a reasonable and safe manner.

57.     Defendants breached the above duties and were negligent in one or more of the following ways:

a.  By failing to exercise reasonable care in protecting and preserving the rights and safety of persons residing in the vicinity of the Facility;

b.  By failing to exercise reasonable care in the management, supervision and operation of the Facility;

c.  By failing to adequately train its employees to properly store and handle hazardous substances at the Facility;

d.  By failing to keep, maintain and operate the Facility in a safe manner;

e.  By violating federal and state regulatory standards, as well as industry standards, in the conduct of its operations at the Facility, particularly in failing to comply with 29 CFR 1910.119, Process Safety Management of Highly Hazardous Chemicals, and 40 CFR 68, Chemical Accident Prevention regulations;

f.  By operating the Facility in such a manner as to cause hazardous substances to be ignited or to be subject to a dangerous chemical reaction at the Facility;

g.  By operating the Facility in such a manner as to cause a plume of dangerous, and chemically-laden, smoke to be emitted from the Facility;

h.  By failing to warn the Plaintiffs, and the Subclasses they represent, of the hidden dangers and unsafe conditions present at the Facility of which they knew, or should have discovered, by reasonable inspection in the exercise of due care; and

     i.  By acting or failing to act in other ways not fully set forth herein but as may be developed during further discovery in this action.

58.   As a direct and proximate result of the negligence of the Defendants as hereinabove alleged, the Plaintiffs, and the Subclasses of Plaintiffs they represent, were damaged as set forth herein and are entitled to recover the same of the Defendants.

<strong><u>COUNT II (Res Ipsa Loquitor)</u></strong>

59.   Plaintiffs re-allege herein all of the above allegations.

60.   At all times relevant, the Facility was under the management and control of Defendants.

61.   The fire, adverse and unintended chemical reactions, and release of harmful and dangerous chemicals at the Facility as described above is such that in the ordinary course of things such does not happen if those who manage the Facility use proper care.

62.   The Incident arose from a lack of care by Defendants and Defendants are liable pursuant to the doctrine of *Res Ipsa Loquitur* for the damages suffered by Plaintiffs and the Subclasses as set forth herein.

63.   As a direct and proximate result of the foregoing as hereinabove alleged, the Plaintiffs, and the Subclasses of Plaintiffs they represent, were damaged as set forth herein and are entitled to recover the same of the Defendants.

<strong><u>COUNT III (Negligence Per Se)</u></strong>

64.   Plaintiffs re-allege herein all of the above allegations.

65.   Pursuant to statutory authority set forth in the Clean Air Act, [42 U. S. C. 7401 et seq.], facilities have a general duty to prevent and mitigate accidental releases of extremely hazardous substances, including dangerous and toxic chemicals in the form of a dense plume of smoke (the "General Duty Clause").

13

66.     Defendants did breach and violate the General Duty Clause by failing to take adequate and proper steps to prevent the Incident.

67.     Pursuant to statutory authority set forth in the Clean Air Act, [42 U. S. C. 7401 et seq.], the U.S. Occupational Safety & Health Administration ("OSHA") promulgated regulations regarding Process Safety Management of Highly Hazardous Chemicals, [29 CFR 1910.119], and the U.S. Environmental Protection Agency ("EPA") promulgated similar regulations regarding Risk Management, [40 CFR 68, et seq.] hereinafter collectively referred to as "the Regulations."

68.     Upon information and belief, Defendants did breach and violate one or more Regulations by failing to ensure that hazardous substances at the Facility were properly handled and stored so as to prevent the Incident. Additional violations will be added as discovery proceeds.

69.     The foregoing violations of Federal Regulations constitute negligence per se on the part of Defendants, making them strictly liable for the damages suffered by Plaintiffs and the Subclasses as set forth herein, without further proof of negligence.

70.     As a direct and proximate result of the foregoing regulatory violations of the Defendants as hereinabove alleged, the Plaintiffs, and the Subclasses of Plaintiffs they represent, were damaged as set forth herein and are entitled to recover the same of the Defendants.

### COUNT IV (Nuisance)

71.     Plaintiffs re-allege herein all of the above allegations.

72.     As a direct and proximate result of Defendants' acts and/or omissions, Defendants did cause an invasion of the Plaintiffs' interest in the private use and enjoyment of the property of Plaintiffs and the Subclasses of Plaintiffs they represent by causing an

14

evacuation and/or a shelter-in-place requirement.

73.    Defendants' acts were intentional and unreasonable, or negligent, reckless or due to abnormally dangerous conditions or activities.

74.    The interference with the use of the Plaintiffs' properties, and the properties of the Subclasses they represent, proximately caused by Defendants was substantial, and resulted in an evacuation and/or shelter-in-place of Plaintiffs and Subclass Members.

75.    As a direct and proximate result of the foregoing acts and/or omissions of the Defendants, which constitute a private nuisance, the Plaintiffs, and the Subclasses of Plaintiffs they represent, have suffered significant harm and were damaged as set forth herein and are entitled to recover the same of the Defendants.

## COUNT V (Trespass)

76.    Plaintiffs re-allege herein all of the above allegations.

77.    As a direct and proximate result of Defendants' acts and/or omissions, Defendants did cause dangerous and hazardous chemicals to trespass upon the Plaintiffs' property and impact the Plaintiffs' rights to use and enjoy their property.

78.    As a direct and proximate result of the foregoing acts and/or omissions of the Defendants, which constitute a trespass, the Plaintiffs, and the Subclasses of Plaintiffs they represent, have suffered significant harm and were damaged as set forth herein and are entitled to recover the same of the Defendants.

## COUNT VI (Strict Liability for Ultra-hazardous Activity)

79.    Plaintiffs incorporate by reference herein the aforementioned allegations.

80.    Defendants engaged in an ultra-hazardous activity by storing and handling dangerous and hazardous substances at the Facility including highly toxic pool chemicals. As a result of these activities, Defendants caused a fire, and adverse and unintended

chemical reactions at the Facility.

81.     These ultra-hazardous activities necessarily involve serious risk of harm to the person, land or chattels of another, and cannot be eliminated by the exercise of due care, nor are they a matter of common usage.

82.     Defendants' activities were inappropriate to the place where they were carried on and their value to the community was out-weighed by their dangerous attributes.

83.     As a direct result of Defendants' ultra-hazardous activities, Defendant is strictly liable for the damages suffered by Plaintiffs and the Subclasses as set forth herein.

84.     As a direct and proximate result of the foregoing as hereinabove alleged, the Plaintiffs, and the Subclasses of Plaintiffs they represent, were damaged as set forth herein and are entitled to recover the same of the Defendants.

### COUNT VII (Punitive Damages)

85.     Plaintiffs re-allege herein all of the above allegations.

86.     The above-described acts and/or omissions of Defendants were willful, wanton, and outrageous, with reckless indifference to the interests of the Plaintiffs and the Subclasses they represent, and as such justify the imposition of punitive damages for the Subclasses in order to punish Defendants and to deter such conduct in the future.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court as follows:

1.     That after due proceedings, this action be certified as a class action;

2.     That in due course, this action proceed as a class action, pursuant to the above named provisions, to judgment as therein provided in favor of Plaintiffs, and the Subclasses Plaintiffs represent, and against Defendants;

3.    That Plaintiffs, and the Subclasses Plaintiffs represent, have and recover damages of the Defendants pursuant to the claims for relief set out in this Complaint;

4.    That Plaintiffs, and the Subclasses Plaintiffs represent, have and recover pre-judgment and post-judgment interest at the maximum legal rate;

5.    That the Plaintiffs, and the Subclasses Plaintiffs represent, have and recover attorneys fees as allowed by law;

6.    That the Plaintiffs, and the Subclasses Plaintiffs represent, have and recover the costs of this action as allowed by law; and

7.    For such other and further relief as the Court deems just and proper.


PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted this 2nd day of October, 2024.

/s/ Roger W. Orlando_____
Georgia Bar Number 554295
The Orlando Firm, PC
315 Ponce de Leon Avenue
Suite 400
Decatur, GA 30030
Tel: 404-373-1800
Fax: 404-373-6999
Email: roger@orlandofirm.com

J. Michael Malone, Esq.
North Carolina State Bar Number 26512
Hendren Redwine & Malone, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC  27612
Tel:  919-573-1423
Fax: 919-420-0475
Email:  mmalone@hendrenmalone.com
*(Pro Hac Admission Pending)*